## Commonwealth vs. Anthony Eberhart.

Hampden. December 6, 2011. - April 10, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Firearms. Constitutional Law,* Right to bear arms. *License. Practice, Criminal,* Presumptions and burden of proof, Sentence.

At the trial of indictments charging the defendant with unlawful possession of a firearm and unlawful possession of a loaded firearm, the judge properly denied the defendant's motion for required findings of not guilty, where the defendant presented no evidence that he held a valid license to carry a firearm, and therefore, the Commonwealth was not required to prove that the defendant did not possess such a license. [813-814]

Discussion of the Massachusetts armed career criminal act and its Federal counterpart, the Federal courts' use of a "categorical approach" to determine whether a prior conviction qualifies as a predicate offense and a "modified categorical approach" when determining the sufficiency of the evidence in the narrow range of cases where the statutory or common-law definition of a prior offense does not conclusively bring it within the category of "violent crimes," and the procedural differences between the Massachusetts and Federal laws. [814-817]

This court concluded that harmful battery and reckless battery are violent crimes under the Massachusetts armed career criminal act, G. L. c. 140, § 121, but offensive battery is not, in that, while assault and battery is not among the list of crimes enumerated in § 121 as a predicate offense, harmful battery and reckless battery have, as an element, the use of "physical force" sufficient to implicate the sentencing enhancement under § 121, but offensive battery, which can be violated through such de minimis touches as tickling and spitting, does not; and in that offensive battery does not, in the ordinary case, involve conduct with the requisite risk to qualify as a "violent crime" under the residual clause of § 121. [818-819]

At the trial of indictments charging the defendant with being an armed career criminal based on three predicate offenses, the evidence of one prior conviction of assault and battery was not sufficient to prove that that conviction was based on harmful or reckless, rather than offensive, battery. [819-820]

Indictments found and returned in the Superior Court Department on July 30, 2009.

The cases were tried before *Daniel A. Ford,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Fellows* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

CORDY, J. On February 8, 2010, a Superior Court jury convicted the defendant on indictments charging unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (*a*);[1] unlawful possession of a loaded firearm, in violation of G. L. c. 269, § 10 (*n*);[2] and unlawful possession of ammunition without a firearm identification (FID) card, in violation of G. L. c. 269, § 10 (*h*).[3] The indictments charging unlawful possession of a firearm and unlawful possession of ammunition further alleged that the defendant previously had been convicted of three violent crimes or serious drug offenses, thus subjecting him to enhanced sentencing as an armed career criminal under G. L. c. 269, § 10G (*c*). One of the three alleged predicate offenses was simple assault and battery, G. L. c. 265, § 13A. At a jury-waived subsequent offender trial, the judge found that the defendant had committed each of the three predicate offenses, and found him guilty of the subsequent offender portions of the indictments.[4] Prior to sentencing, the judge dismissed the indictment charging unlawful possession of ammunition without an FID card as duplicative.

The defendant appeals from his convictions of possession of a firearm and possession of a loaded firearm. We transferred the

---

[1]General Laws c. 269, § 10 (*a*), generally prohibits the possession of a firearm outside one's home or business without a license to carry it.

[2]General Laws c. 269, § 10 (*n*), generally prohibits the possession of a firearm in violation of § 10 (*a*) (that is, outside one's home or business without a license to carry it), which is loaded with ammunition. Although not relevant to this case, § 10 (*n*) also prohibits possessing a machine gun or sawed-off shotgun in violation of G. L. c. 269, § 10 (*c*) (that is, without a license), which is loaded with ammunition.

[3]The defendant also was convicted of unlawful possession of a class B controlled substance with intent to distribute (methylenedioxy methamphetamine, as a subsequent offender), G. L. c. 94C, § 32A (*c*) & (*d*); violation of the controlled substance law (school or park zone), G. L. c. 94C, § 32J; assault and battery on a police officer, G. L. c. 265, § 13D; possession of a firearm during the commission of a felony, G. L. c. 265, § 18B; and resisting arrest, G. L. c. 268, § 32B. The defendant does not appeal from these convictions.

[4]The defendant also was convicted as a subsequent offender on the charge of unlawful possession of methylenedioxy methamphetamine with intent to distribute. He does not contest that conviction in this appeal.

case to this court on our own motion, and paired it for argument with *Commonwealth* v. *Gouse*, *ante* 787 (2012) (*Gouse*). Relying on the United States Supreme Court decisions in *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010) (*McDonald*), and *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) (*Heller*), the defendant argues that (1) the Commonwealth should bear the burden of proving that he did not possess a license to carry a firearm as an element of the crimes of unlawful possession of a firearm and unlawful possession of a loaded firearm; and (2) G. L. c. 269, § 10 (*a*) and (*n*), unduly restricts the right to keep and bear arms for the purposes of self-defense.[5] For the reasons expressed in *Gouse*, *supra* at 799-808, we reject the defendant's argument and affirm his firearm convictions.

The defendant also appeals from his conviction under the sentencing enhancement provision of G. L. c. 269, § 10G (*c*), on the ground that the evidence presented in support of one of his three prior convictions, assault and battery, failed to establish that he had committed a "violent crime" within the meaning of G. L. c. 140, § 121. Adopting the reasoning of the Appeals Court in its recent decision in *Commonwealth* v. *Colon*, 81 Mass. App. Ct. 8 (2011) (*Colon*), we agree with the defendant. Consequently, we vacate the judgment of conviction under G. L. c. 269, § 10G (*c*), as an armed career criminal based on three predicate offense convictions, and we remand the case for the entry of judgment and resentencing under G. L. c. 269, § 10G (*b*), based on two predicate offense convictions.

1. *Background.* We summarize the limited facts relevant to our inquiry. On June 25, 2009, Detective Thomas Kakley and Sergeant Kevin Devine of the Springfield police department were driving in an unmarked cruiser in the area of Ruth Elizabeth Park in Springfield. Kakley recognized the defendant, who he knew had several outstanding motor vehicle warrants, speaking to the driver of a vehicle parked on Hickory Street, which borders the park. Kakley got out of the cruiser and attempted to

---

[5]The defendant also renews his argument that the Commonwealth should be required to prove as an element of the unlawful possession of ammunition offense that he did not have a firearm identification (FID) card, and asks this court to vacate his conviction on that indictment. Given the dismissal of the indictment as duplicative of the defendant's conviction of unlawful possession of a loaded firearm, we do not reach this argument.

apprehend the defendant. The defendant resisted. A struggle ensued, which Devine then joined.

The officers ultimately subdued the defendant and placed him in handcuffs. In the defendant's pocket, Devine found a six-shot revolver, which was loaded with four rounds of ammunition, a plastic bag containing thirty-five tablets (later determined to be methylenedioxy methamphetamine, also known as "MOMA" or "Ecstasy") and $137. The officers also found a bag of marijuana on the ground near where the scuffle had occurred.

At trial, the Commonwealth did not present evidence in its case-in-chief that the defendant lacked a license to carry the firearm found on his person or an FID card permitting him to possess ammunition. As a result, the defendant moved for, and was denied, required findings of not guilty on the firearms and ammunition charges at the close of the Commonwealth's case.[6]

The defendant then testified in his own defense. He denied possessing the gun, the ammunition, and the drugs; on cross-examination, he testified that he did not possess either an FID card or a license to carry a firearm.[7]

After the jury returned their verdicts, the defendant waived a jury trial on the subsequent offender portions of the firearm and ammunition charges. For each of the three predicate offenses listed in the indictments — possession of a class B substance with intent to distribute, assault and battery by means of a dangerous weapon, and simple assault and battery — the Commonwealth called the arresting officer to testify and submitted a certified copy of the relevant conviction or corresponding docket.

[6]The defendant had been charged with unlawful possession of a controlled substance with intent to distribute (marijuana), under G. L. c. 94C, § 32C (*b*); the judge, however, granted the defendant's request for a required finding of not guilty as to this charge at the close of the Commonwealth's evidence.

[7]Before the case went to the jury, the defendant requested a jury instruction that "the Commonwealth must prove as an element . . . that Defendant did not have the license described in Chapter 140." The judge denied this request, and instructed the jury: "[T]here's no evidence in the case that the defendant had a license to carry a firearm. For that reason, the issue of license is not relevant to your deliberations, therefore, you should put that issue out of your mind." With regard to the charge of possessing ammunition, the judge instructed the jury: "There's no evidence in the case that the defendant had an FID card and, therefore, the issue of FID card is not relevant to your deliberations and you should put that issue out of your mind as well."

With regard to the assault and battery conviction, the Commonwealth called Officer John Carolan, who testified that he had arrested the defendant on September 4, 2004. Carolan provided no substantive information about the crime, other than describing it as "[a]ssault and battery domestic and intimidation of a witness." The Commonwealth then introduced a certified copy of a docket from the Springfield Division of the District Court Department that indicated that the defendant had pleaded guilty to a single charge of assault and battery on August 25, 2005.[8]

2. *Convictions under G. L. c. 269, § 10 (a) and (n).* The defendant contends that our ruling in *Commonwealth* v. *Jones,* 372 Mass. 403, 406 (1977), that the "[a]bsence of a license is not 'an element of the crime' " of unlawful possession of a firearm, and that the "holding of a valid license" is an affirmative defense to that charge, conflicts with an individual's right to keep and bear arms under the Second Amendment to the United States Constitution, as defined in *Heller, supra,* and *McDonald, supra.* He further contends that, in light of those Second Amendment decisions, a "presumption of unlawfulness" based on the mere carrying of a firearm is no longer sustainable, and the Commonwealth must carry the affirmative burden of proving the absence of a license as an element of the offense.

We have today rejected the essential core of the defendant's argument in *Gouse, supra* at 801-808, concluding that "[n]othing in the *McDonald* and *Heller* decisions has altered or abrogated our jurisprudence regarding the elements of the crime of unlawful possession of a firearm or the allocation of the burdens of production and proof with respect to the affirmative defense of licensure." See *Commonwealth* v. *Loadholt,* 460 Mass. 723, 727 (2011). Our reasoning in that case applies with equal force here. The holding of a license remains an affirmative defense to the crime of unlawful possession of a firearm, whether loaded or not, in violation of G. L. c. 269, § 10 (*a*) and (*n*),[9] *Gouse, supra;* and the Commonwealth bears the burden of proving its

---

[8]The Commonwealth also offered the testimony of Officer Lee Prentice of the Springfield police department, who confirmed that the fingerprints taken during the booking procedure after a September 4, 2004, arrest for "[a]ssault and battery domestic and intimidation of a witness" belonged to the defendant.

[9]The elements of unlawful possession of a loaded firearm under G. L. c. 269, § 10 (*n*), are essentially identical to the elements of unlawful possession

absence only if and when the defendant presents some evidence of licensure. *Id.* Here, the defendant presented no such evidence and his motion for required findings of not guilty was properly denied.[10,11]

3. *Assault and battery as a "violent crime" under G. L. c. 140, § 121.* The defendant argues that a certified conviction of assault and battery does not suffice to prove that he committed a "violent crime," absent additional evidence demonstrating that the crime of which he was convicted "has as an element the use, attempted use or threatened use of physical force" or "presents a serious risk of physical injury to another." G. L. c. 140, § 121. We are in accord with the recent decision in *Colon, supra* at 12-22, on this precise point. We summarize the essential points of the Appeals Court's analysis, providing additional commentary when appropriate.

General Laws c. 269, § 10G (*a*)-(*c*) (§ 10G), imposes enhanced sentencing on a person who, having previously been convicted of at least one "violent crime" or serious drug offense, is convicted of possession of a firearm or ammunition. For purposes of § 10G, a "violent crime" is defined as

"[A]ny crime punishable by imprisonment for a term

---

of a firearm under G. L. c. 269, § 10 (*a*), except the Commonwealth must prove that the firearm was loaded with ammunition. We do not address here whether the Commonwealth must also prove that the defendant knew that the firearm he possessed was loaded. See G. L. c. 269, § 10 (*n*) (whoever violates statute prohibiting unlawful carrying of firearm "by means of a loaded firearm . . . shall be further punished"); *Commonwealth* v. *Johnson, ante* 44, 52-53 (2011) ("To convict the defendant of unlawful possession of a loaded firearm, the Commonwealth was required to prove that the defendant knowingly possessed a firearm that was loaded with ammunition and met the legal requirements of a firearm as defined by G. L. c. 140, § 121").

[10]The defendant also asserts a facial challenge to G. L. c. 269, § 10, summarily arguing that the statute is overly broad and unduly restrictive of an individual's right to keep and bear arms. His concise statement of this argument, however, "cannot be said to rise to the level of acceptable appellate argument under Mass. R. A. P. 16 (a) (4), as amended, 376 Mass. 921 (1975)." *Adoption of Kimberly*, 414 Mass. 526, 536-537 (1993). Accordingly, we decline to address it. See *Commonwealth* v. *Cook*, 419 Mass. 192, 194 n.1 (1994).

[11]Like the defendant in *Commonwealth* v. *Gouse, ante* 787 (2012), Eberhart was indicted for and convicted of possessing a firearm in a public area (not in his home or business, nor in defense of the same), and the charges against him did not infringe on his right to keep and bear arms under the Second Amendment to the United States Constitution as that right has been explicated by the Supreme Court.

.

exceeding one year . . . that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another."

G. L. c. 140, § 121. See G. L. c. 269, § 10G (*e*). The definition of a violent crime under § 10G "therefore has three components: (1) the 'physical force' or 'force' clause; (2) the enumerated crimes provisions; and (3) the residual clause." *Colon, supra* at 12.

Section 10G's language "largely replicates" the language of the Federal armed career criminal act (Federal ACCA), 18 U.S.C. § 924(e) (2006). *Colon, supra* at 12-14. See *Commonwealth* v. *Ware*, 75 Mass. App. Ct. 220, 223 (2009). See also *Commonwealth* v. *Anderson, ante* 616, 626 n.10 (2012). In particular, the definition of "violent crime" in § 10G is almost identical to the definition of "violent felony" in the Federal ACCA. See *Colon, supra* at 13. We therefore "consider the Federal courts' construction of the Federal statute highly persuasive in interpreting [§ 10G]." *Colon, supra* at 14.

Under the Federal ACCA, sentencing judges use a "categorical approach" to determine whether a prior conviction qualifies as a predicate offense. *Colon, supra* at 15, citing *Taylor* v. *United States*, 495 U.S. 575, 602 (1990). "This approach 'generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.' " *Colon, supra*, quoting *Taylor* v. *United States, supra*. Massachusetts courts have previously applied the categorical approach when interpreting the "serious drug offense" prong of § 10G, *Commonwealth* v. *Ware, supra* at 224-225, and cases cited, and when determining whether a defendant has allegedly committed an offense that subjects him to pretrial detention for dangerousness, G. L. c. 276, § 58A. See *Commonwealth* v. *Young*, 453 Mass. 707, 711-716 (2009). We agree that "this straightforward categorical approach also applies to [§ 10G] jury trials when the statutory definition of the prior offense unambiguously qualifies that offense as a predicate conviction." *Colon, supra* at 15.

The categorical approach does not always produce a conclusive determination whether the defendant has been convicted of a "violent crime." The defendant may have been convicted under a broad statute that encompasses multiple crimes, not all of which are "violent crimes." In this "narrow range of cases," Federal judges utilize a "modified categorical approach," consulting extrinsic evidence to determine the material elements that formed the basis of the defendant's prior convictions. *Id.* at 16, quoting *Johnson* v. *United States*, 130 S. Ct. 1265, 1273 (2010).

The procedure for conducting this additional inquiry is different under Massachusetts law and Federal law. *Colon, supra* at 14-15, 16. Under Federal law, the sentencing judge determines whether the defendant has been convicted of sentence-enhancing predicate felonies. See, e.g., *Johnson* v. *United States, supra.* The judge's inquiry is confined to the trial records of the predicate felonies — including "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Id.*, and cases cited. Under Massachusetts law, a defendant facing sentence enhancement based on prior convictions is entitled to a jury trial. G. L. c. 278, § 11A. At this subsequent offender trial, the "trial judge may admit any evidence that would have been admissible at the original trial of the alleged predicate offense." *Colon, supra* at 16 n.8.[12] Because the same standard of proof applies as in a regular trial, G. L. c. 278, § 11A, this evidence must suffice to prove, beyond a reasonable doubt, that the crime for which he was convicted was a violent crime. *Id.* at 16.

We emphasize that, at the subsequent offender trial, "the Commonwealth need not retry the prior conviction . . . ; the Commonwealth need only prove *which statutory or common-law definition* was the basis of the prior conviction" (emphasis original). *Id.* at 16 n.8. The United States Court of Appeals for the First Circuit has concisely explained the objective of a court

---

[12]This flexibility alleviates the concern, raised under the Federal system, that it will often be impossible to prove the nature of a predicate felony from this limited range of documents. See *Johnson* v. *United States*, 130 S. Ct. 1265, 1277-1278 (2010) (Alito, J., dissenting); *Shepard* v. *United States*, 544 U.S. 13, 21-23 (2005).

reviewing a prior conviction under the modified categorical approach:

> "It would be appropriate for the sentencing court to look to the conduct in respect to which the defendant was charged and pled guilty, *not* because the court may properly be interested (in this context) in the violent or non-violent nature of that particular conduct, but because that conduct may indicate that the defendant and government both believed that the generically violent crime . . . rather than the generically non-violent crime . . . was at issue" (emphasis original).

*United States* v. *Harris*, 964 F.2d 1234, 1236 (1st Cir. 1992), overruled on other grounds, *Shepard* v. *United States*, 544 U.S. 13 (2005).

Under the modified categorical approach, a certified record of conviction referencing a particular statute may prove that the defendant committed a violent crime only when all crimes encompassed within that statute are violent crimes. The *Colon* court explained:

> "If a certified record of conviction identifies a statutory or common-law term which could refer to multiple crimes with different material elements, then the certified record permits any rational factfinder to conclude, beyond a reasonable doubt, that the defendant was convicted of a 'violent crime' only if *all* crimes defined by that statutory or common-law term are 'violent crimes.' See [*Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979)]; *United States* v. *Holloway*, 630 F.3d [252,] 256-257 [(1st Cir. 2011)]. See also *Shepard* v. *United States*, 544 U.S. [13], 15-17, 24-26 [(2005)]. If the statutory or common-law crime encompasses several offenses at least one of which is *not* a 'violent crime,' then a rational factfinder would require some additional evidence that the conviction at issue was of one of the offenses included in that term that *is* a 'violent crime' in order to conclude, beyond a reasonable doubt, that the defendant was previously convicted of a 'violent crime.' See *Commonwealth* v. *Latimore, supra*. Accord *United States* v. *Holloway*, [*supra*] at 259-260." (Emphases in original.)

*Colon, supra* at 16-17.

We now apply these principles to assault and battery, again tracking the analysis in *Colon*. The statutory crime of assault and battery, G. L. c. 265, § 13A, encompasses three common-law crimes: harmful battery, reckless battery, and offensive battery.[13] *Commonwealth* v. *Burke*, 390 Mass. 480, 482 (1983); *Commonwealth* v. *Boyd*, 73 Mass. App. Ct. 190, 194-195 (2008). Harmful battery is "[a]ny touching 'with such violence that bodily harm is likely to result' . . . ." *Commonwealth* v. *Burke*, *supra*, quoting *Commonwealth* v. *Farrell*, 322 Mass. 606, 620 (1948). Reckless battery is a "wilful, wanton and reckless act which results in personal injury to another." *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 274 (1983). Offensive battery occurs when "the defendant, without justification or excuse, intentionally touched the victim, and . . . the touching, however slight, occurred without the victim's consent." *Commonwealth* v. *Hartnett*, 72 Mass. App. Ct. 467, 476 (2008). "The affront to the victim's personal integrity is what makes the touching offensive." *Commonwealth* v. *Burke*, *supra* at 483.

The *Colon* court analyzed whether all three crimes of assault and battery are predicate "violent crimes" under § 10G. *Colon*, *supra* at 18. In so doing, it reviewed the three clauses encompassed in the definition of "violent crime" in G. L. c. 140, § 121: the enumerated crimes clause, the force clause, and the residual clause. *Id.* at 18-22. See *id.* at 12. Assault and battery is not among the list of enumerated crimes. *Id.* at 18.

The "force clause" defines a "violent crime" as one that "has as an element the use, attempted use or threatened use of physical force." G. L. c. 140, § 121. Drawing from United States Supreme Court precedent interpreting the Federal ACCA, the *Colon* court concluded that the phrase "physical force" means "violent or substantial force capable of causing pain or injury." *Colon*, *supra*, citing *Johnson* v. *United States*, 130 S. Ct. 1265, 1271 (2010). Harmful battery and reckless battery do have as an element the use of "physical force" sufficient to implicate the sentencing enhancement. Offensive battery,

[13]More precisely, "[u]nder the common law there are two theories of assault and battery: intentional battery and reckless battery." *Commonwealth* v. *Porro*, 458 Mass. 526, 529 (2010). Offensive battery is a form of intentional battery. See *id.*; *Commonwealth* v. *Burke*, 390 Mass. 480, 482-483 (1983).

however, which can be committed through such de minimis touchings as tickling and spitting, does not. *Colon, supra* at 19-20, citing *Commonwealth* v. *Hartnett, supra,* and *Commonwealth* v. *Cohen,* 55 Mass. App. Ct. 358, 359-360 (2002).

The "residual clause" qualifies an offense as a "violent crime" if it "otherwise involves conduct that presents a serious risk of physical injury to another." G. L. c. 140, § 121. Again drawing guidance from Federal precedent, the *Colon* court concluded that "[o]ffensive battery does not, in the ordinary case, involve conduct with the requisite risk." *Colon, supra.* at 22.

In sum, of the three crimes of assault and battery codified in G. L. c. 265, § 13A, harmful battery and reckless battery are "violent crimes," but offensive battery is not. *Colon, supra* at 17-18. Accord *United States* v. *Harris, supra* ("Massachusetts 'assault and battery' statute covers two separate crimes — one involving actual [or potential] physical harm and the other involving a 'nonconsensual' but unharmful touching"). Accordingly, a certified conviction of assault and battery is insufficient to prove beyond a reasonable doubt that a defendant committed a "violent crime" for the purpose of sentencing enhancement under § 10G.[14]

In the present case, the only evidence offered in connection

---

[14]Our opinion also accords in most respects with the most recent treatment of the Massachusetts assault and battery statute under the Federal armed career criminal act. See *United States* v. *Holloway,* 630 F.3d 252 (1st Cir. 2011). The *Holloway* court concluded that a generic charging document alleging that the defendant "did assault and beat" the victim, G. L. c. 277, § 79, is insufficient to prove that the defendant committed a violent felony. *Id.* at 260. It reasoned that at least one of the three crimes of assault and battery — offensive battery — is not a violent felony under the force clause, *id.* at 259-260; and that at least one of the three crimes of assault and battery — reckless battery — is not a violent felony under the residual clause. *Id.* at 260-262.

The *Holloway* court thus concluded that reckless battery was not a violent crime only under the residual clause. We conclude that reckless battery is a violent crime under the force clause, an issue not addressed by the *Holloway* opinion. See *United States* v. *Booker,* 644 F.3d 12, 20 & n.10 (1st Cir. 2011), cert. denied, 132 S. Ct. 1538 (2012).

We further note that the *Holloway* court's conclusion with respect to reckless battery accorded with then-binding instruction from the United States Supreme Court that the residual clause is limited to an offense that "typically involve[s] purposeful, 'violent,' and 'aggressive' conduct." *United States* v. *Holloway, supra* at 260, quoting *Begay* v. *United States,* 553 U.S. 137, 144-145 (2008). Last year, however, the Supreme Court retreated from this

with the defendant's prior conviction of assault and battery was a certified conviction from the Springfield Division of the District Court Department and the testimony of arresting Officer John Carolan to the effect that the defendant was charged with "[a]ssault and battery domestic and intimidation of a witness." As the Commonwealth concedes, this minimal additional evidence failed to prove beyond a reasonable doubt that the defendant's prior conviction was based on harmful or reckless battery. The Commonwealth thus sufficiently proved only that the defendant had committed two predicate offenses under § 10G. See *Colon, supra* at 24-25.

4. *Conclusion.* For the foregoing reasons, we uphold the defendant's firearm convictions under G. L. c. 269, § 10 (*a*) and (*n*). On the subsequent offender portion of the indictment, we set aside so much of the judgment of conviction as pertains to the predicate offense of assault and battery, and remand the case for the entry of judgment and resentencing under G. L. c. 269, § 10G (*b*), based on two predicate offenses.

*So ordered.*

---

characterization of the residual clause. *Sykes* v. *United States*, 131 S. Ct. 2267, 2270, 2277 (2011) (holding that vehicular flight from police officer after order to stop is violent felony under residual clause). The Court iterated that "[t]he phrase 'purposeful, violent, and aggressive' has no precise textual link to the residual clause, which requires that an ACCA predicate 'otherwise involv[e] conduct that presents a serious potential risk of physical injury to another.' " *Id.* at 2275, quoting 18 U.S.C. § 924(e)(2)(B)(ii) (2006). The Court applied only the statutory language, finding that "risk levels provide a categorical and manageable standard that suffices to resolve the case before us." *Id.* at 2275-2276. See *Miller* v. *United States*, 792 F. Supp. 2d 104, 107 (D. Mass. 2011) (speculating in dicta whether *Sykes* "marks a shift in the standard" for application of residual clause to assault and battery).