PEREZ, COMMONWEALTH vs., 100 Mass. App. Ct. 7

 
 COMMONWEALTH vs. FRANKY PEREZ.

100 Mass. App. Ct. 7
 April 5, 2021 - July 9, 2021

Court Below: Superior Court, Worcester County
Present: Ditkoff, Singh, & Englander, JJ.

 

Firearms. Assault and Battery on Certain Public Officers and Employees. Assault and Battery by Means of a Dangerous Weapon. Assault by Means of a Dangerous Weapon. Evidence, Prior violent conduct, Guilty plea, Prior conviction, Presumptions and burden of proof. Statute, Construction. Intentional Conduct. Wanton or Reckless Conduct. Practice, Criminal, Bifurcated trial, Prior conviction, Sentence, Assistance of counsel, Question by jury, Instructions to jury, Presumptions and burden of proof.

At a criminal trial at which the Commonwealth sought to have the defendant sentenced as an armed career criminal based on previous convictions of assault and battery to which the defendant had pleaded guilty, although the Commonwealth's evidence (i.e., the testimony of a victim-witness regarding each of the offenses) could have supported a finding in each instance of either intentional or reckless conduct, the evidence was not sufficient to permit the judge to determine that the defendant had pleaded guilty to intentional rather than reckless assault and battery. [11-17]

At a criminal trial, defense counsel, in seeking not to draw attention to a potentially harmful question from the jury, was not ineffective in making a tactical decision not to request a curative instruction with regard to that question. [17-18]

INDICTMENTS found and returned in the Superior Court Department on May 15, 2014.

 The cases were tried before J. Gavin Reardon, Jr., J., and a motion for a new trial, filed on April 8, 2019, was considered by him.

 Paul C. Brennan for the defendant.

 Michelle R. King, Assistant District Attorney, for the Commonwealth.

 ENGLANDER, J. The Massachusetts version of the armed career criminal act (ACCA), G. L. c. 269, § 10G, provides for enhanced sentences for certain firearm offenses, where the Commonwealth also shows that the defendant has been "previously convicted of" one or more "violent crime[s]." Recently, in Commonwealth v.

 Page 8 

 Ashford, 486 Mass. 450, 457 (2020), the Supreme Judicial Court held that a conviction of assault and battery by means of a dangerous weapon that is based on reckless, rather than intentional conduct, does not qualify as a "violent crime" under our ACCA. Here we consider what proof will suffice, in light of Ashford, to show that a prior conviction of assault and battery qualifies as a violent crime, particularly in the context where the defendant pleaded guilty to the prior offense.

 In this case the Commonwealth sought to prove that the defendant was "convicted of" five prior violent crimes (all variants of assault and battery or assault) by having the previous victims or witnesses testify, at the ACCA portion of the trial, to their memory of what the defendant had done (in some instances twenty years earlier). G. L. c. 269, § 10G (c). With respect to several of the crimes the testimony described conduct that could have been found to be either intentional or reckless. The Commonwealth introduced no evidence regarding any of the plea hearings, and thus no evidence as to what facts were presented or agreed to in connection with the pleas. The judge found that the defendant had committed four prior violent crimes (of the five alleged), and sentenced him to the mandatory minimum of fifteen years in prison, as an armed career criminal with a level three enhancement. See G. L. c. 269, § 10G (c). We hold that the Commonwealth's evidence as to two of the prior convictions -- both of which involved guilty pleas -- was insufficient as a matter of law. Discerning no error in the convictions of the more recent firearm offenses, we remand for resentencing. [Note 1]

 Background. 1. The firearm offenses trial. The underlying firearm offenses stem from an event on February 23, 2014. At about 1:50 a.m. on that date, a crowd of patrons was exiting the El Rincon bar and restaurant in Worcester when a member of the crowd produced a handgun and fired several shots into the air. Worcester police officers responded to the scene and interviewed members of the crowd. One witness, a photographer who had been hired to take photographs at the bar that night, reported that the shooter was a man with long dreadlocks, and showed the officers three photographs that he had taken of the shooter earlier that night at the bar. A second witness gave a description of the

 Page 9 

 shooter that was similar to the photographer's, and later that evening identified the defendant in a showup identification.

 The defendant was indicted for unlawful possession of a firearm, G. L. c. 269, § 10 (a), as an armed career criminal, G. L. c. 269, § 10G (c); unlawful possession of ammunition, G. L. c. 269, § 10 (h) (1), as an armed career criminal, G. L. c. 269, § 10G (c); and discharging a firearm within 500 feet of a building, G. L. c. 269, § 12E. The case went to trial in June of 2017, and the firearm charges were first tried to a jury, [Note 2] which returned guilty verdicts for possession of a firearm, possession of ammunition, and discharging a firearm within 500 feet of a building.

 2. The armed career criminal trial. After the convictions of the firearm offenses, the case moved to the ACCA phase, which was tried jury waived. The Commonwealth presented evidence of five prior offenses that it claimed met the "violent crime" standard, four involving a guilty plea and the fifth a bench trial. G. L. c. 269, § 10G (c). As to each the Commonwealth presented a police officer witness to prove the nature of the offenses. In all but one instance the police officer was also a victim of the crime. As noted, no evidence was submitted regarding any of the plea hearings. There were no transcripts, and no testimony as to what was said at the hearings.

 After hearing the witnesses, the judge found beyond a reasonable doubt that four of the five crimes met the criteria of G. L. c. 269, § 10G, for an armed career criminal enhancement. The evidence as to those crimes is summarized here:

 a. 1995 assault and battery on a police officer. In 1995 the defendant pleaded guilty to assault and battery on a police officer, as a result of an incident where he elbowed an officer in the nose while resisting arrest. At the ACCA trial, the Worcester police officer involved testified that he had attempted to stop the defendant following a suspected drug deal. The defendant did not stop, prompting the officer to grab the defendant by the arm. The officer testified that:

 "[The defendant] continued to move away. He flailed his arms, telling me to get off him . . . . That's when he flailed

 Page 10 

 -- swung his arm backwards and hit me in the nose[,] . . . he moved his elbow straight back into my face." 

The blow temporarily stunned the officer, but he eventually restrained the defendant.

 b. 1998 assault and battery by means of a dangerous weapon -- a door. In 1998 the defendant pleaded guilty to two counts of assault and battery by means of a dangerous weapon (a door) after shutting a door on two police officers, while resisting arrest. At the ACCA trial a different officer of the Worcester Police Department testified that he had responded to a residence regarding a noise complaint involving loud music. The officer testified that he was met at the doorway by the defendant, who was hostile to the officers and "took his chest and put it against my chest, pushing me back." When the defendant was informed that he was under arrest,

"[h]e started flailing his arms and forced his way back into the apartment. . . . He was flailing his arms, trying not to allow us to place cuffs on him. He was kicking us back and kicking us at the lower part of our legs . . . multiple times. He was just trying to . . . [avoid] getting arrested. . . . [The other officer] was trying to . . . grab his arm. That's when he struck [the other officer] with the door. . . . He grabbed the door, trying to slam it shut so that we couldn't put him under arrest." [Note 3]

Additional officers responded and the defendant was subdued.

 c. 2000 assault by means of a dangerous weapon -- motor vehicle. In 2000 the defendant pleaded guilty to assault by means of a dangerous weapon after nearly hitting an officer with his automobile. At the ACCA trial Massachusetts State Trooper Sean Murphy, who had been a Southbridge Police Officer at the time of the event, testified that he had been working a traffic detail at a construction site with two other officers. Murphy observed the defendant driving an automobile, and remarked to the other officers that he believed the defendant to have a suspended driver's license. The officers attempted to flag down the defendant, but the 

 Page 11 

defendant attempted to drive away, coming very close to one of the officers in the process. Trooper Murphy testified:

"I saw [the defendant's automobile] swerve towards the deputy, and [the deputy] made the basic maneuver to get out of the way, and the vehicle continued . . . . [The deputy had to] [m]ove out of the way . . . . [The vehicle got] [v]ery close [to the deputy] . . . within two to three feet." 

With the help of additional officers, the defendant was located in an apartment a short distance away and arrested.

 d. 2000 assault by means of a dangerous weapon -- firearm. Finally, in 2000 the defendant was convicted of assault by means of a dangerous weapon after a bench trial. Following a report of shots fired in the Great Brook Valley neighborhood in Worcester, yet another Worcester Police Officer responded to the scene and spoke to a witness who had seen the shooter, as well as the vehicle the shooter had fled in. The vehicle and the defendant were located nearby, and the defendant was then brought back to the scene, where the witness identified him as the shooter. The officer testified at the ACCA trial that "a couple of shell casings" were recovered, and that two vehicles at the scene had been damaged and bore punctures consistent with bullet holes.

 Having found four qualifying predicate offenses, the judge sentenced the defendant to the mandatory minimum terms of fifteen years under G. L. c. 269, § 10G (c). This appeal followed.

 Discussion. 1. The defendant's enhanced sentences under the ACCA. General Laws c. 269, § 10G, provides a staircase of mandatory minimum and maximum enhanced punishments for certain weapons-related offenses, if a defendant has been "previously convicted of [one or more] violent crime[s] or . . . serious drug offense[s] . . . arising from separate incidences." Commonwealth v. Wentworth, 482 Mass. 664, 670 (2019). Here we are concerned only with the "violent crime" prong of the statute, as the defendant was not previously convicted of serious drug offenses. "Violent crime" is a defined term. See G. L. c. 269, § 10G (e); G. L. c. 140, § 121. It has four enumerated components, but in this case we concern ourselves only with one, known as the "force clause":

"[A]ny crime punishable by imprisonment for a term exceeding one year . . . that: (i) has as an element the use, attempted

 Page 12 

 use or threatened use of physical force or a deadly weapon against the person of another."

G. L. c. 140, § 121. [Note 4]

 The language of the Massachusetts statute "largely replicates" that of its Federal counterpart, 18 U.S.C. § 924(e)(2)(B) (Federal ACCA), and there is a considerable body of case law, from both the Federal courts and the Supreme Judicial Court, that grapples with the many issues raised when a prosecutor seeks to prove that a defendant was "previously convicted of" a "violent crime" (citation omitted). Commonwealth v. Eberhart, 461 Mass. 809, 817 (2012). In general, the case law prefers to take a "categorical approach," in which a particular crime is identified as categorically "violent," or nonviolent, in all of its factual iterations. Id. at 815-816. A crime is categorically a violent crime if proof of the required elements will always satisfy the statutory definition -- an example is rape, for which intentional use of force is a required element. Where the prior crime is categorically a violent crime, a conviction can be proved simply by a court document, such as a judicial record of a judgment. See id. at 817, citing Commonwealth v. Colon, 81 Mass. App. Ct. 8, 16-17 (2011).

 Certain crimes, however, may or may not qualify as violent crimes, depending on their particular facts. Among these are assault and battery, assault and battery by means of a dangerous weapon, and assault and battery of a police officer. As the Supreme Judicial Court explained in Eberhart, 461 Mass. at 818, "[t]he statutory crime of assault and battery . . . encompasses three common-law crimes: harmful battery, reckless battery, and offensive battery." The Eberhart court concluded that harmful battery -- defined as "[a]ny touching 'with such violence that bodily harm is likely to result'" -- is a violent crime under the "force clause" of the ACCA, but that offensive battery is not (citation omitted). Id. at 818-819. In Ashford, the Supreme Judicial

 Page 13 

 Court examined a related issue involving reckless conduct, and this time concluded that reckless assault and battery does not qualify as a violent crime under G. L. c. 269, § 10G. See Ashford, 486 Mass. at 467. Relying in part on the reasoning of Federal case law, the court concluded that where the application of force results from recklessness as opposed to intentional conduct, it does not meet the statutory language of the ACCA requiring that the defendant "use[d]" force "against the person of another." Id. at 462. See G. L. c. 140, § 121. [Note 5]

 Importantly, for those crimes such as assault and battery that are not categorically violent crimes, the Supreme Judicial Court has adopted a "modified categorical approach" to determining whether the defendant committed a violent crime. Ashford, 486 Mass. at 459-460. As applied in our courts, under the modified categorical approach the finder of fact is not limited to court documents, such as a judgment or the transcript of a colloquy, but can consider additional evidence regarding the factual basis for the conviction at issue. See Ashford, supra at 468.

 Against this backdrop, we consider the evidence regarding the first two prior crimes found by the judge. Each of these crimes was a variant of assault and battery, and accordingly neither of them qualifies as categorically violent. More evidence was required. The Commonwealth attempted to prove the violent nature of the crimes by presenting the victims to testify as to what had occurred. The Commonwealth asserts that this approach is endorsed by language in several Supreme Judicial Court opinions, which it claims allows the predicate facts to be shown by "any evidence that would have been admissible at the original trial of the alleged predicate offense." Ashford, 486 Mass. at 468, quoting Eberhart, 461 Mass. at 816. The Commonwealth accordingly contends that it can satisfy its burden with "a police report or the testimony of a police officer witness," and that the evidence adduced here was sufficient to establish that the convictions were for violent crimes.

 The defendant counters that the evidence presented was not sufficient to show that the convictions at issue were based on intentional, rather than reckless, conduct. The defendant goes further, however, and contends that at least where the conviction in 

 Page 14 

question is the result of a guilty plea, the testimony of victim-witnesses is essentially irrelevant. He contends instead that the Commonwealth needed to show that the defendant pleaded guilty to a violent crime, and that the only way to show this, where the crime is not categorically violent, would be by adducing evidence of what facts were presented at the plea hearing. The defendant also points out that any approach that would allow the Commonwealth to prove the violent nature of the prior crime through witness testimony not previously adduced would raise serious constitutional issues, under (at least) the double jeopardy and due process clauses.

 In our view, the defendant is correct at least to this extent: as a matter of the statute's plain language, the Commonwealth must show that the crime the defendant was "convicted of" was violent. G. L. c. 269, § 10G. Where the defendant pleaded guilty, a transcript of the plea hearing or a related document, such as a plea agreement, will be the best evidence of what the defendant was "convicted of." Id. If the Commonwealth seeks to use other evidence, however, that evidence must be sufficiently tied to the defendant's plea to support a reasonable conclusion about the facts of the crime to which the defendant actually pleaded guilty. Cf. Shepard v. United States, 544 U.S. 13, 25 (2005) ("the only certainty of a . . . finding lies . . . [in a pleaded case] in the defendant's own admissions or accepted findings of fact"). Put another way, where as here the defendant pleaded guilty to an offense that encompasses both violent and nonviolent crimes under the ACCA, whatever evidence the Commonwealth puts forward must be sufficient for the fact finder to find that the facts to which the defendant pleaded guilty showed (beyond a reasonable doubt) that he was convicted of the violent offense.

 In the context of an assault and battery, it may be very difficult to demonstrate that a defendant pleaded guilty to intentional rather than reckless conduct through subsequent testimony of a victim-witness, as the facts of this case show. Here the victim-witnesses' testimony did not address what happened at the plea hearing, or what the defendant agreed that he did. More generally, we observe that a victim-witness might testify at the ACCA trial to facts that the defendant does not agree with, and never did. Indeed, it is not hard to imagine that a defendant could have pleaded guilty to assault and battery, even though there was significant disagreement between the victim and the defendant as to what the defendant actually did, and in particular, whether the defendant's conduct was 

 Page 15 

intentional or merely reckless. And these possibilities beg the question of how such factual disputes can be resolved, without reference to what happened at the plea hearing.

 In short, there is considerable nuance to the issue of how the Commonwealth proves that a crime was violent, when the predicate crime at issue is subject to the modified categorical approach. In this case, however, we need not decide the broader questions posed by the defendant, because in our view the Commonwealth simply did not prove, with respect to the two guilty plea convictions at issue, that the defendant was "convicted of" an intentional, rather than a reckless, assault and battery. G. L. c. 269, § 10G. As described above, with respect to each of these convictions the testimony of the victims at the ACCA trial could have supported a finding of either intentional or reckless conduct. The 1995 assault and battery was an elbow to the face of a police officer, during an arrest. The 1998 assault and battery by means of a dangerous weapon involved shutting a door on an officer, also during an arrest. In each instance had the battery been intentional it would have been violent under Ashford, but a lack of intention would have left the conduct as merely reckless.

 Even if the judge could have found that the defendant agreed to the facts as described by the witnesses, the defendant's agreement would not necessarily have established intentional rather than reckless assaults and batteries. Rather, the defendant would merely have agreed that he committed an assault and battery that could either be intentional or reckless. An assault and battery that could be either intentional or reckless, however, is not a "violent crime." Ashford, 486 Mass. at 465. But in any event, in neither of these two prior convictions do we know what actually transpired at the plea hearing. Under the circumstances the evidence before the judge was not sufficient for the judge to determine that the defendant pleaded guilty to intentional rather than reckless assault and battery. [Note 6]

 Our decision is in line with the Supreme Judicial Court's decision in Wentworth, 482 Mass. at 673-674. In Wentworth the predicate offense also was an assault and battery to which the defendant had pleaded guilty, and the issue was whether the 

 Page 16 

Commonwealth had sufficiently proved violence under the modified categorical approach. Id. at 671-674. The court ruled that the evidence was sufficient, but notably, in Wentworth, supra at 674, there was evidence as to the facts the defendant admitted:

"During the plea colloquy [at the ACCA trial], . . . the prosecutor elaborated that the facts of the domestic assault and battery were that the defendant 'struck his girlfriend at the time in the face and shoved her down on the bed.' The defendant agreed to the facts presented by the prosecutor. This evidence is sufficient 'evidence of the circumstances surrounding' the assault and battery to demonstrate a touching with such violence that bodily harm is likely to result -- i.e., a harmful battery."

Evidence such as the above was lacking in this case, and here the two prior assaults and batteries involving guilty pleas have not been proven to be "violent crimes" beyond a reasonable doubt for the purposes of the ACCA. [Note 7] G. L. c. 269, § 10G.

 As the court stated in Commonwealth v. Beal, 474 Mass. 341, 354 (2016), "remand [for a second trial for the introduction of further evidence] is not appropriate" where "[t]here was no improper receipt or exclusion of evidence, only a failure to marshal 

 Page 17 

the evidence necessary to support a conviction." Thus, we remand for resentencing under G. L. c. 269, § 10G (a), consistent with this opinion. [Note 8]

 2. Ineffective assistance of counsel at the firearm offenses trial and the defendant's motion for a new trial. Finally, the defendant raises issues with respect to the trial of the firearm charges, having to do with the handling of a question from the jury during deliberations. The jury sent two questions to the judge, one of which asked: 

 "Does [the defendant] have a previous record?"

At sidebar, the judge briefly discussed the jury's questions with both the prosecutor and defense counsel, and determined that the best course would be to send a short written response to the jury:

"The testimony and evidence has been closed. You must rely on your collective memory in resolving these questions." 

Both attorneys assented to this response.

 In his motion for a new trial, the defendant argued that the judge's instruction was inadequate, and that his trial counsel should have requested a curative instruction "that to the extent that [the jury] may have the recollection of any evidence that the defendant had a criminal record, they are to disregard it." A statement from the defendant's trial counsel submitted with the motion for a new trial explained that counsel's decision not to request any further curative instruction was a tactical decision, and that his "legal strategy was not [to] amplify the matter and perhaps make it worse or confussing [sic] by the judge giving too much of an explanation in his response to the question." The judge, considering this statement,

 Page 18 

 denied the motion without an evidentiary hearing, stating that "trial counsel made a rational tactical decision not to draw attention to a potentially harmful question."

 We perceive no error. The "trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly," has discretion over the appropriate response to a jury question. Commonwealth v. Van Bell, 455 Mass. 408, 420 (2009), quoting Commonwealth v. Robinson, 449 Mass. 1, 7-8 (2007). The judge's instruction was not inaccurate, nor was there an objection to it. Trial counsel stated that he had "made a tactical decision not to press the issue. . . . This decision was not unreasonable, much less 'manifestly unreasonable'" (citation omitted). Commonwealth v. Haley, 413 Mass. 770, 777-778 (1992) (discussing tactical decision to request no curative instruction after some jurors had "viewed the defendant in restraints" to avoid "emphasiz[ing]" issue). We also conclude that the judge did not abuse his discretion in declining to hold an evidentiary hearing on the defendant's motion as it did not raise a substantial issue. See Commonwealth v. Wallis, 440 Mass. 589, 596 (2003).

 Conclusion. For the foregoing reasons, the underlying convictions of unlawful possession of a firearm, unlawful possession of ammunition, and discharging a firearm within 500 feet of a building are affirmed. The finding that the defendant was guilty as an armed career criminal pursuant to G. L. c. 269, § 10G (c), is vacated, and the case is remanded for resentencing under G. L. c. 269, § 10G (a), consistent with this opinion.

So ordered.

FOOTNOTES
[Note 1] As discussed infra, at note 8, a third prior conviction does not qualify under the ACCA, because it is not "sequential" under the holding in Commonwealth v. Resende, 474 Mass. 455, 469 (2016). 

[Note 2] Where a defendant is indicted with a sentence enhancement under the ACCA there is a bifurcated trial. The underlying offenses are tried first, without reference to any prior offense. G. L. c. 278, § 11A. If the defendant is found guilty on the underlying offense(s), the second stage of the trial addresses whether the defendant was previously convicted of the ACCA predicate offenses. Id. 

[Note 3] The defendant was also charged with two counts of assault and battery by means of a dangerous weapon -- shod foot -- in relation to his kicking of the officers. Those charges were dismissed, and the defendant pleaded guilty only to the charges involving the door. 

[Note 4] More fully, G. L. c. 140, § 121, defines "violent crime" as: 

"[A]ny crime punishable by imprisonment for a term exceeding one year . . . that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another."

 Clause (iv) above -- known as the "residual clause" -- was held to be unconstitutionally vague by the Supreme Judicial Court and is not operative. Commonwealth v. Beal, 474 Mass. 341, 351 (2016).

[Note 5] Since Ashford was decided, the United States Supreme Court has also reached the conclusion, under the Federal ACCA, that offenses with a mens rea of recklessness do not qualify as a violent crime. See Borden v. United States, 141 S.Ct. 1817 (2021). 

[Note 6] We note that the defendant was tried and sentenced under the ACCA in June of 2017, some two and one-half years prior to the Supreme Judicial Court's decision in Ashford. At that time, the case law indicated that reckless battery qualified as a violent crime under the ACCA. See Wentworth, 482 Mass. at 673; Eberhart, 461 Mass. at 818. 

[Note 7] We note that the problems with taking additional evidence regarding a prior conviction have previously been addressed at length in the Federal courts. See Ashford, 486 Mass. at 462 (looking to Federal court decisions as persuasive authority). Indeed, as a result of these problems the Federal courts simply do not allow proof such as was adduced in this case, when addressing whether a particular noncategorical crime qualifies as a predicate offense under the Federal ACCA. See Shepard, 544 U.S. at 25-26; Taylor v. United States, 495 U.S. 575, 601-602 (1990). Instead, "enquiry under the [Federal] ACCA . . . is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard, supra at 26. And, while the Supreme Judicial Court allows the Commonwealth to submit a broader class of ACCA evidence than is allowed in the Federal courts (because our process includes a jury right), the Commonwealth still bears the burden of proving what the defendant was previously "convicted of," and where the defendant pleaded guilty, this requires evidence that allows a reasonable inference as to the facts of the crime to which the defendant pleaded guilty. 

 Deciding the case as we do, we do not reach the defendant's arguments regarding potential constitutional issues with the process employed here -- that is, whether the double jeopardy or due process clauses prevent having a victim or witness testify, years later, as to a crime that has already been adjudicated, in order to enhance the sentence for a new offense.

[Note 8] The defendant has raised no argument that the third offense -- for assault by means of a dangerous weapon -- is not categorically a violent crime, and expressly conceded at oral argument that it qualifies as a predicate offense. Likewise, the defendant has not challenged the sufficiency of the evidence as to the fourth offense -- the conviction in 2000, after a bench trial, involving the firing of a weapon into two automobiles (shooting conviction). This was also a conviction of assault by means of a dangerous weapon. 

 Nevertheless, these two convictions qualify as only one predicate offense under the ACCA, because the fourth crime was prosecuted during the pendency of the prosecution of the third crime (the 2000 assault involving the defendant's driving his automobile near a police officer), and thus did not qualify as a separate or "sequential," offense. Commonwealth v. Resende, 474 Mass. 455, 469 (2016). Accordingly, on remand there is but one qualifying offense remaining for ACCA purposes.

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.