NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11938

COMMONWEALTH vs. DAUNTE BEAL.[1]


Suffolk.     December 10, 2015. - May 24, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Firearms.  Assault and Battery by Means of a Dangerous Weapon.
     Assault by Means of a Dangerous Weapon.  Practice,
     Criminal, Duplicative convictions, Sentence.  Evidence,
     Prior violent conduct.  Due Process of Law, Vagueness of
     statute.




     Indictments found and returned in the Superior Court
Department on November 14, 2008, and January 30, 2009.

     The cases were tried before Thomas E. Connolly, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Jessica L. LaClair for the defendant.
     Teresa K. Anderson, Assistant District Attorney (Joseph F.
Janezic, III, Assistant District Attorney, with her) for the
Commonwealth.


     DUFFLY, J.  This case arises from a shooting that occurred

---

     [1] As is our custom, we refer to the defendant by the name
appearing in the indictments.

at a cookout in the Dorchester section of Boston on a summer night in 2008.  The defendant was convicted by a Superior Court jury on indictments charging unlawful possession of a firearm, G. L. c. 269, § 10 (a); unlawful possession of ammunition, G. L. c. 269, § 10 (h); carrying a loaded firearm, G. L. c. 269, § 10 (n); assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265,§ 15A; and two counts of assault by means of a dangerous weapon, G. L. c. 265, § 15B (b).[2]  The indictments charging unlawful possession of a firearm also alleged that the defendant previously had been convicted of two violent crimes and thus was subject to enhanced penalties under the Massachusetts armed career criminal act, G. L. c. 269, § 10G (ACCA).  In a separate trial following these convictions, the same jury found the defendant guilty of the subsequent offender portions of the indictments.

The defendant appealed from his convictions, and we allowed his application for direct appellate review.  The defendant argues that (1) the evidence was insufficient to prove assault and battery by means of a dangerous weapon causing serious bodily injury; (2) the convictions of two counts of assault by means of a dangerous weapon were duplicative of the conviction of assault and battery by means of a dangerous weapon causing

---

[2] The jury acquitted the defendant of armed assault with the intent to commit murder.

serious bodily injury; and (3) the conviction of possession of ammunition is duplicative of the conviction of possession of a loaded firearm.  He also contends that the evidence presented by the Commonwealth in support of his prior convictions was insufficient to establish that he had committed a "violent crime," and therefore he cannot be convicted under the subsequent offender portion of the indictments.  For the reasons set forth below, we affirm in part and reverse in part.

1.  Background.  We summarize the facts the jury could have found, reserving additional facts for later discussion.  On the night of the shooting, Joao Pereira, the shooting victim, and his brother, Ovidio Pereira,[3] were celebrating a friend's birthday at a cookout at a house on Howard Avenue in Dorchester.  As some of the guests were standing on the front porch, a man who was walking past the house on the opposite side of the street said to "Nelito," one of the partygoers, "Oh, what are you looking at?"  Nelito responded, "Oh, you are looking at me, I'm just looking at you."  The man continued walking down the street, but returned with another man, who asked Joao if he "[had] a problem."  The two men eventually walked away and had a conversation with two other men in a Toyota Corolla automobile that was driving past.  The Toyota continued up the street,

---

[3] Because the two brothers share a last name, we will refer to Ovidio Pereira and Joao Pereira by their first names.

turned around, and stopped in front of the house where the cookout was taking place. By that time, there were approximately eight people standing in front of the house, and another round of verbal exchanges occurred between the occupants of the Toyota and the guests at the party.

As the vehicle idled in the street, the driver said, "Oh, you guys are still looking at us funny." Joao responded, "Nobody's looking at you," to which the driver retorted, "Oh, if you keep looking at me funny, I'm going to get out the car and slap you." Joao replied, "You don't have no right to slap nobody." Joao and another partygoer then threw beer bottles at the Toyota; one bottle hit the driver in the head and another bottle broke the rear side window on the driver's side.

The driver, later identified as the defendant,[4] got out of the vehicle, aimed a gun at the group on the porch, and fired two shots. The partygoers scattered in different directions. Joao and Ovidio ran to the back of the house with the defendant chasing after them; they tried to get inside, but the door was locked. They ran back to the front porch where the defendant, standing on the first step, fired several more shots at them. One bullet struck Joao in the lower back.

---

[4] This identification was through circumstantial evidence and not witness identification; the identity of the driver was vigorously contested at trial, as the defendant pursued a defense of misidentification.

The defendant ran back to the Toyota and jumped in, and the vehicle sped away. Police responded to a 911 call that had been placed by a neighbor, who had seen the events unfold from his bedroom window. Shortly thereafter, the defendant was arrested at his house. He was bleeding from the side of his head, and had dried blood on his hands and face. The defendant's mother provided police with a key to the Toyota that the defendant had given her.[5] Investigating officers found a firearm on the floor of the Toyota and broken glass scattered throughout the vehicle. Swabs of reddish brown stains were collected from the firearm, the ground in front of the Howard Avenue house, and the floor of an apartment the defendant had visited shortly before his arrest. Tests performed on the deoxyribonucleic acid (DNA) that was recovered from these locations included the defendant as a possible contributor to each of the samples.[6]

---

[5] After the shooting, the defendant was driven in the Toyota, which belonged to his mother, to a nearby apartment building. He left the Toyota in the parking lot of that building.

[6] A deoxyribonucleic acid (DNA) criminalist from the Boston police crime laboratory testified that she extracted the same DNA profile from each of the three samples, and that she was able to "get a full complete profile [of] characteristics at all [sixteen] locations." When asked about the statistical significance of her findings that the defendant was a "possible source of the DNA," she explained that the DNA profiles extracted from the three samples were "the same exact profile" extracted from a DNA swab taken from the defendant, and that the profile "could be found in 1 in 110 quintillion Caucasians, 1 in 120 quintillion African-Americans, and 1 in 1.6 quintillion

The defendant testified in his own defense and admitted to having been in the Toyota on the night of the shooting, but claimed that another occupant of the vehicle had fired the shots.  In support of this contention, the defendant asserted that he was not wearing the white T-shirt and dark baseball hat that a witness testified the shooter had been wearing.

At the close of the Commonwealth's case and again at the close of all the evidence, the defendant filed motions for required findings of not guilty; the motions were denied.  After the jury returned their verdicts, a trial was conducted on the subsequent offender portion of the indictments.  The same jury heard evidence that the defendant previously had been convicted, pursuant to his guilty pleas, of assault and battery upon a public employee and assault and battery.  Certified copies of these convictions were introduced, and the defendant stipulated that he was the individual who had been convicted of those crimes.  After the Commonwealth rested, the defendant filed a motion for a required finding, arguing that the Commonwealth had failed to establish that both prior offenses constituted "violent crimes" within the meaning of the ACCA.  The judge

---

Southeastern Hispanics."  The criminalist testified that the DNA profile was "very rare," and that the statistics describing the probability that a randomly chosen person would have the same DNA profile include people of all races, although only three racial categories are identified by name.  The defendant is from Cape Verde.

denied the motion, and the jury found him guilty.

2. <u>Sufficiency of the evidence of assault and battery by means of a dangerous weapon resulting in serious bodily injury</u>. We review the denial of a motion for a required finding to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 319 (1979). The defendant contends that the evidence was insufficient to support a conviction of assault and battery by means of a dangerous weapon resulting in serious bodily injury, G. L. c. 265, § 15A (c) (i), because the Commonwealth did not introduce testimony from Joao, testimony from medical personnel who treated his injuries, or his medical records.

"Serious bodily injury" means "bodily injury which results in a permanent disfigurement, loss or impairment of a bodily function, limb or organ, or a substantial risk of death." G. L. c. 265, § 15A (d).[7] We have said that "impairment of a limb occurs when, because of significant damage to its structure, its capacity to perform its usual function is compromised."

---

[7] General Laws c. 265, § 13A (b) (i), establishes enhanced penalties for an assault and battery that causes "serious bodily injury," and uses the same definition of "serious bodily injury" as does G. L. c. 265, § 15A (d). See G. L. c. 265, § 13A (c). Therefore, we look to cases interpreting G. L. c. 265, § 13A (c), for guidance.

Commonwealth v. Scott, 464 Mass. 355, 359 (2013). Clearly, "the loss of a limb . . . would have a substantial impact on a victim on a par with injuries causing permanent disfigurement or risking death." Id. But the impairment "need not be permanent to meet the definition of 'serious bodily injury.'" Commonwealth v. Marinho, 464 Mass. 115, 118 (2013).

Here, the evidence established that the defendant shot Joao in the lower back. Ovidio testified that Joao spent two months in a Boston hospital, where he was taken immediately following the shooting, and then spent six months at an inpatient rehabilitation hospital. Upon returning home, Joao used a wheelchair; he was unable to walk without the use of crutches and braces on his legs; he had to be carried up and down the stairs leading to his second-floor apartment; and he was unable to get in and out of the shower stall without assistance. One witness testified that Joao has not been able to walk properly since the shooting.

Jurors are permitted to draw reasonable inferences from the evidence based on their common sense and life experience. See Commonwealth v. Kostka, 370 Mass. 516, 536 (1976). Based on the evidence presented in this case, the jury were permitted to find that the gunshot wound inflicted by the defendant caused Joao to suffer an impairment of his limbs, which resulted in "significant damage" to the structure of his legs, and that the

capacity of his legs "to perform [their] usual function [was] compromised." See Commonwealth v. Scott, supra. The impairment of Joao's legs plainly meets the definition of substantial bodily injury as set forth in the statute. See id.; G. L. c. 265, § 15A (d). Moreover, Joao was able to walk without impediment before he was shot in the back, and after the shooting he was at first unable to walk and later unable to walk without assistance. It would have been reasonable for the jury to infer that the gunshot caused the impairment, based on the chronology of events following the shooting, and in the absence of any other theory presented to explain the cause of Joao's injuries. See Commonwealth v. Marinho, supra at 119 (Commonwealth must prove "that the defendant either directly caused or 'directly and substantially set in motion a chain of events that produced' the serious injury in a natural and continuous sequence").

The defendant maintains that the jury could not reach this conclusion absent medical evidence or testimony from the victim. In these circumstances, we do not agree. Although the evidence did not explain the precise biological mechanism by which the gunshot wound could have impaired Joao's ability to walk or to use his legs without assistance, the jury were permitted to conclude, based on common sense, that the gunshot wound to Joao's back compromised his ability to use his lower limbs. The

defendant's reliance on Commonwealth v. Scott, supra, is misplaced.  There, the victim's medical records established that she suffered from "a 'grade II' laceration of the liver," id. at 357, but the Commonwealth did not introduce medical testimony to explain the "technical terminology" used in the reports or to establish whether such a laceration "affected the liver's ability to fulfil its functional role."  See id. at 362, 364. Absent such evidence, we determined that the jury could not have reached the conclusion that the victim's injury constituted an impairment of her liver "based on information that was within the ordinary, common experience of a reasonable juror."  Id. at 364.  By contrast, the evidence of the injuries presented here -- the inability to use one's legs, the need to use a wheelchair, and the necessity of crutches and braces in order to walk -- was within the ordinary, common experience of a reasonable juror.  The jury could have concluded, without undue speculation, that the gunshot wound caused Joao's injuries. Thus, the evidence supports the conviction of assault and battery resulting in "serious bodily injury."

3.  Duplicative convictions.  The defendant contends that his convictions on two indictments charging assault by means of a dangerous weapon (one assault against Joao and the other against Ovidio) were duplicative of his conviction of the greater offense of assault and battery by means of a dangerous

weapon causing serious bodily injury against Joao.  The Commonwealth's theory at trial was that the defendant fired shots at Joao and Ovidio in two distinct episodes:  one when the defendant got out of the Toyota and fired two shots, and another after the defendant chased Joao and Ovidio to the rear of house and back around to the front porch, at which point he fired several more shots, one of which hit Joao in the back.  The judge did not instruct the jury that these offenses must be based on separate and distinct acts, nor did the judge explain which of the alleged acts corresponded to each of the charges.

Because the defendant did not raise the issue of duplicative convictions in the Superior Court, we review his claim to determine whether there was an error that created a substantial risk of a miscarriage of justice.  See Commonwealth v. Kelly, 470 Mass. 682, 697-698 (2015).  As the defendant argues, assault by means of a dangerous weapon is a lesser included offense of assault and battery by means of a dangerous weapon causing serious bodily injury.  See Commonwealth v. Porro, 458 Mass. 526, 529 (2010).  "Convictions of both greater and lesser included acts are permitted only when they 'rest on separate and distinct acts.'"  Commonwealth v. Gouse, 461 Mass. 787, 798 (2012), quoting Commonwealth v. Jackson, 80 Mass. App. Ct. 528, 529 (2011).  The jury must determine whether a defendant's acts "constitute separate and distinct acts or must

be considered a single crime." Commonwealth v. Kelly, supra at 699, quoting Commonwealth v. Vick, 454 Mass. 418, 435 n.16 (2009).

We examine the convictions of assault by means of a dangerous weapon and assault and battery by means of a dangerous weapon causing serious bodily injury based on the actions against Joao. As we explained in Commonwealth v. Kelly, supra, even if "there was evidence of separate and distinct acts sufficient to convict with respect to each . . . charge, the judge's failure to instruct the jury that each charge must be based on a separate and distinct act create[s] a substantial risk of a miscarriage of justice." Id. at 702. Accordingly, although the prosecutor argued in closing that the defendant's shooting at Joao occurred in two separate episodes that could support two distinct convictions, and the facts might support that conclusion, we are unable to determine on which facts each conviction rested. Contrary to the Commonwealth's argument, the judge's instruction that each charge must be considered separately does not cure the error. See id. at 701. Therefore, because we have "serious doubt" whether the jury impermissibly based the convictions of the greater and lesser included offenses on the same act, the conviction of assault by means of a dangerous weapon against Joao must be vacated. See id. at 700-701.

A different analysis applies to the defendant's conviction of assault by means of a dangerous weapon against Ovidio. As to this charge, the judge instructed that the defendant's acts must have been directed against Ovidio. The defendant was not charged with the greater offense of assault and battery by means of a dangerous weapon against him. In this context, even if the jury convicted the defendant of the assault against Ovidio based on the gunshot that hit Joao, which is the same act underlying the defendant's conviction of assault and battery by means of a dangerous weapon against Joao, those two convictions are not duplicative. "'[W]henever a single criminal transaction gives rise to crimes of violence which are committed against several victims, then multiple indictments (and punishments)' for the crime against each victim 'are appropriate.'" Commonwealth v. Traylor, 472 Mass. 260, 268 (2015), quoting Commonwealth v. Donovan, 395 Mass. 20, 31 (1985). Consequently, the judge was not required to instruct the jury on separate and distinct acts with respect to this charge.

The defendant also contends, and the Commonwealth now concedes, that his conviction of unlawful possession of ammunition under G. L. c. 269, § 10 (h), is a lesser offense included within his conviction of unlawful possession of a loaded firearm under G. L. c. 269, § 10 (n). See Commonwealth v. Johnson, 461 Mass. 44, 52-54 (2011). We agree that where all

of the ammunition was loaded in the firearm, these convictions are duplicative, and conclude that the conviction under G. L. c. 269, § 10 (h), cannot stand.

4. Conviction under the Massachusetts armed career criminal act. The ACCA imposes an enhanced sentence on an individual who is convicted of possession of a firearm if that person previously has been convicted of a "violent crime" or a serious drug offense. See Commonwealth v. Eberhart, 461 Mass. 809, 814 (2012) (Eberhart); G. L. c. 269, § 10G. Under the ACCA, a "violent crime" is "any crime punishable by imprisonment for a term exceeding one year . . . that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another." G. L. c. 140, § 121. See G. L. c. 269, § 10G (e) (defining "violent crime" as having meaning set forth in G. L. c. 140, § 121, for purposes of enhanced sentences for firearms and ammunition convictions). Thus, to constitute a violent crime under the ACCA, the crime must fall within the scope of either (1) the force clause; (2) the enumerated crimes provision; or (3) the residual clause. Eberhart, supra at 815.

The defendant previously was convicted of assault and battery, G. L. c. 265, § 13A (a), and assault and battery upon a public employee, G. L. c. 265, § 13D.  As he did at trial, the defendant argues that the certified copies of convictions, which were the only evidence the Commonwealth introduced, were insufficient to prove that he committed two "violent crimes" within the meaning of the ACCA.  After the case was fully briefed, the United States Supreme Court decided Johnson v. United States, 135 S. Ct. 2551, 2555-1556, 2563 (2015) (Johnson), holding that the residual clause of the "violent felony" provision of the Federal armed career criminal act (Federal ACCA) is unconstitutionally vague under the due process clause of the Fourteenth Amendment to the United States Constitution.  In terms of its definitions of predicate crimes, the Massachusetts ACCA "largely replicates" the Federal ACCA, and, as a consequence, we often look to the Federal courts for guidance on issues relating to the meaning and scope of this statute.  See Eberhart, supra.  The parties submitted supplemental briefs setting forth their positions on how Johnson, supra, affects the inquiry in this case.

Under the invalidated residual clause in the Federal ACCA, 18 U.S.C. § 924(e)(2)(B) (2012), a crime constituted a "violent felony" if it was punishable by imprisonment for more than one year and "otherwise involve[d] conduct that present[ed] a

serious potential risk of physical injury to another."[8]  The United States Supreme Court's decision in Johnson, supra at 2557, began by acknowledging the well-established rule that courts must use the "categorical approach" to determine whether an offense constitutes a violent felony by "pictur[ing] the kind of conduct that the crime involves in 'the ordinary case,' and . . . judg[ing] whether that abstraction presents a serious potential risk of physical injury" (citation omitted).  The Court then concluded, based largely on the arbitrariness of hypothesizing the "ordinary case" of any given crime, that "[i]ncreasing a defendant's sentence under the clause denies due process of law" because "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."  Id.

---

[8] At the time the United States Supreme Court issued its decision in Johnson v. United States, 135 S. Ct. 2551 (2015) (Johnson), a "violent felony" under the Federal armed career criminal act (Federal ACCA) was defined as:

> "any crime punishable by imprisonment for a term exceeding one year . . . that --
>
> "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> "(ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

18 U.S.C. § 924(e)(2)(B) (2012).  Congress does not yet appear to have amended the language of the Federal ACCA to remove the residual clause that the Court concluded was invalid.

The Court was particularly concerned with the "grave uncertainty" regarding "how to estimate the risk posed by a crime" and "how much risk it takes for a crime to qualify as a violent felony." Id. at 2557-2558. The Court looked no further than its own cases to find a level of uncertainty that was constitutionally impermissible. See id. at 2558-2560. The Court in Johnson thus invalidated the residual clause of the Federal ACCA. Id. at 2557.

The language of the residual clause in the Massachusetts ACCA is almost identical to that in the Federal ACCA; the only difference is that the Federal ACCA uses the term "potential" to qualify the level of risk required. Compare 18 U.S.C. § 924(e)(2)(B) ("conduct that presents a serious potential risk"), with G. L. c. 140, § 121 ("conduct that presents a serious risk"). We think the additional term does not create a meaningful difference between the two provisions.[9] We agree with the Court's analysis in Johnson, supra, and conclude that the residual clause of the Massachusetts ACCA is unconstitutionally vague.

We turn next to the defendant's argument that the evidence was insufficient to support his conviction under the ACCA

---

[9] We note also that, in its supplemental brief, the Commonwealth supports the position that Johnson renders the residual clause of the Massachusetts ACCA unconstitutionally vague, on the same reasoning as the United States Supreme Court.

because the Commonwealth failed to present evidence that his two predicate offenses were "violent crimes." As noted, the only evidence the Commonwealth introduced relative to those convictions was the copies of the certified convictions of the defendant's prior offenses (assault and battery, and assault and battery on a public employee).

Our decision in Eberhart resolves this issue. In that case, we explained that we use the "modified categorical approach" to determine whether a defendant had been convicted of a violent crime when the defendant was "convicted under a broad statute that encompasses multiple crimes," not all of which are categorically "violent crimes." Eberhart, supra at 816. Unlike the Federal ACCA, under Massachusetts law a defendant is entitled to a jury trial to determine whether a sentence enhancement for being an armed career criminal is applicable.[10] See id. The evidence presented at that trial "must suffice to prove, beyond a reasonable doubt, that the [previous] crime for which [the defendant] was convicted was a violent crime." Id.

_____

[10] Under Federal law, a judge determines whether a defendant's prior offenses are considered predicate felonies under the Federal ACCA; the judge's inquiry is limited to trial records of the prior felonies. See Commonwealth v. Eberhart, 461 Mass. 809, 816 (2012). In applying the modified categorical approach under Federal law, courts are permitted to examine "the elements, rather than the facts, of a crime." Descamps v. United States, 133 S. Ct. 2276, 2285 (2013).

Applying this analysis, in Eberhart, supra at 818, we concluded that only two of the three variants of common-law battery encompassed by G. L. c. 265, § 13A -- harmful battery and reckless battery -- qualify as "violent crimes" under the force clause, which requires that the crime "has as an element the use, attempted use or threatened use of physical force."[11] See G. L. c. 140, § 121. Offensive battery, which "can be committed through such de minimis touchings as tickling and spitting," is not a violent crime. Eberhart, supra at 818-819. Because not all of the crimes encompassed within the battery statute are violent crimes, we concluded that "a certified conviction of assault and battery is insufficient to prove beyond a reasonable doubt that a defendant committed a 'violent crime' for the purpose of sentencing enhancement under [the ACCA]." Id. at 819. Here, as discussed, the only evidence presented to establish that the defendant's prior conviction of assault and battery was a violent crime was a certified copy of the conviction. The Commonwealth now concedes that, for the reasons set forth in Eberhart, supra, this evidence was insufficient to support the defendant's conviction under the ACCA based on the predicate offense of assault and battery. Id.

---

[11] In Commonwealth v. Eberhart, supra at 819, we also reached the same determination under the residual clause. In light of our conclusion today that the residual clause is unconstitutionally vague, we do not consider the defendant's prior acts under the residual clause.

The determination that assault and battery is not categorically a "violent crime" leads to the conclusion that assault and battery upon a public employee also is not a violent crime. The offense of assault and battery upon a public employee, G. L. c. 265, § 13D, differs from assault and battery, G. L. c. 265, § 13A, in three respects. First, the crime must be committed "upon any public employee when such person is engaged in the performance of his duties at the time of such assault and battery." G. L. c. 265, § 13D. Second, the offense carries a minimum punishment of imprisonment for ninety days, while assault and battery carries no minimum punishment. Id. Third, a person who commits that offense may be arrested upon probable cause without a warrant if the victim is a public employee operating a public transit vehicle. Id.

These differences, however, do not change the underlying acts that constitute an assault and battery. Like the general crime of assault and battery, assault and battery upon a public employee can be committed through a harmful battery, a reckless battery, or an offensive battery. Therefore, the same reasoning underlying our conclusion that assault and battery is not a violent crime, see Eberhart, supra at 818-819, leads to the conclusion that assault and battery on a public employee is not categorically a violent crime. See id. at 814, 818, quoting

G. L. c. 140, § 121, and Commonwealth v. Colon, 81 Mass. App. Ct. 8, 12-22 (2011).

Pointing to cases from Federal courts and the Appeals Court that have concluded that assault and battery on a police officer (not public employee) is categorically a violent crime under the now-defunct residual clause, see, e.g., United States v. Dancy, 640 F.3d 455, 469-470 (1st Cir.), cert. denied, 132 S. Ct. 564 (2011), and Commonwealth v. Colon, supra at 22-23, the Commonwealth urges us to conclude that the offense is categorically a violent crime under the force clause. We decline to adopt this approach. General Laws c. 265, § 13D, encompasses all assault and batteries against "any public employee," and is not restricted to police officers. It would be contrary to the "categorical approach" to determine that a single subset of a particular offense is categorically a violent crime. See, e.g., Descamps v. United States, 133 S. Ct. 2276, 2285 (2013) (describing categorical approach and modified categorical approach).

More importantly, however, we do not think that the reasoning employed by courts that have concluded that assault and battery against a public employee, when committed against a police officer, constitutes a violent crime under the residual clause is applicable to the inquiry under the force clause. For instance, in Commonwealth v. Colon, supra at 22, the Appeals

Court concluded that an assault and battery committed against a police officer, even if of the offensive battery type, is a violent crime under the residual clause because "even a minor dispute with a civilian distracts from the officer's duties" and "creates a public risk."  This line of reasoning is not relevant to our inquiry in light of the conclusion we adopt today concerning the constitutional infirmity of the residual clause. The question we must answer is whether assault and battery upon a public employee qualifies as a "violent crime" under the force clause.  For the reasons set forth with respect to our analysis of assault and battery, we conclude that it does not. Consequently, because the Commonwealth failed to introduce evidence other than the certified copies of the defendant's convictions to support the charge under the ACCA, the evidence was insufficient for a conviction, where the predicate offense was assault and battery against a public official.

Finally, we decline the Commonwealth's request that we remand the matter so that the Commonwealth may present at a second trial evidence sufficient to establish that the defendant violated the ACCA.  The prohibition against double jeopardy "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."  Burks v. United States, 437 U.S. 1, 11 (1978).  See Berry v. Commonwealth, 393

Mass. 793, 797-798 (1985). As the Commonwealth argues, "the double jeopardy principle does not automatically bar retrial 'where an insufficiency of evidence appeared only when material held on appellate review to have been erroneously admitted was notionally removed from the case'" (citation omitted). Commonwealth v. DiBenedetto, 414 Mass. 37, 45 (1992), S.C., 427 Mass. 414 (1998). But that principle is not applicable in this case. Here, the jury convicted the defendant based on evidence properly introduced by the Commonwealth, and our reversal of the conviction rests on the ground that the evidence was insufficient to support it. There was no improper receipt or exclusion of evidence, only a failure to marshal the evidence necessary to support a conviction. In such a context, remand is not appropriate.[12] Marshall v. Commonwealth, 463 Mass. 529, 538 (2012) ("The State . . . generally cannot retry a defendant

---

[12] We also decline the Commonwealth's suggestion that remand is appropriate because the judge incorrectly instructed the jury. Before trial, the defendant asserted that the Commonwealth's reliance on the certified copies of his convictions would be insufficient because neither of his prior offenses is categorically a "violent crime." The prosecutor countered that the Commonwealth was not required to submit evidence other than the certified convictions on the issue of "violent crime." The judge agreed with the Commonwealth, and the prosecutor chose to rely solely on the certified convictions at trial. The judge then incorrectly instructed the jury that the defendant's prior convictions were "violent crimes by definition" under Massachusetts law. However, the dispositive issue here is sufficiency of the evidence; even if the judge had instructed the jury properly, the result on appeal would be no different because the evidence the Commonwealth introduced was insufficient.

'when an appellate court overturns a conviction because of insufficient evidence'" [citation omitted]).

5. Conclusion. The judgment of conviction of assault by means of a dangerous weapon against Joao Pereira, G. L. c. 265, § 15B (b), and the judgment of conviction under the armed career criminal act, G. L. c. 269, § 10G, are reversed. The remaining convictions are affirmed.

So ordered.