Following a jury trial in the Superior Court, the defendant, Devone Suber, was convicted of unlawful possession of ammunition in violation of G. L. c. 269, § 10(h ).[2] In a subsequent jury-waived trial, the defendant was found to be an armed career criminal, level three, pursuant to the Massachusetts Armed Career Criminals Act (ACCA). On appeal, he contends that reversal is warranted because (1) his pretrial motion to suppress evidence was erroneously denied; and (2) the trial judge violated his right to a fair trial by improperly advocating for the prosecution. He also argues that the armed career criminal level three determination was invalid under both the "residual" and "force" clauses of the ACCA. We affirm.
Background. Prior to trial, the defendant moved to suppress the ammunition found on his person by the police. We first summarize the facts as found by the motion judge[3] in his comprehensive memorandum and order denying the motion.
On the night of May 3, 2013, a man was shot and killed at an apartment within the Alice Heywood Taylor housing project in the Mission Hill neighborhood of Boston. Police Officer Shannon O'Donnell arrived on the scene within a minute of the first radio call, which went out at 12:41 A.M. Upon entering the apartment, she observed a man lying on his back, bleeding from an apparent gunshot wound. Although he was receiving cardiopulmonary resuscitation, he exhibited no pulse or signs of respiration. A witness told O'Donnell that she had seen the shooter fire several rounds from a long handgun, and described him as a "black Hispanic male" who was about five feet, ten inches tall, around 180 pounds, and wearing a black sweatshirt.
Officers Steven Dodd and Andrew Hunter arrived at the apartment within three minutes of the first radio call. While on the scene, they heard the shooter's physical description as provided to Officer O'Donnell, and were told that, last observed, he was wearing a "dark hooded sweatshirt" and carrying "a long black handgun." Thereafter, they departed to search for potential suspects. Dodd and Hunter were dressed in plain clothes, and patrolled in an unmarked but readily identifiable Crown Victoria police cruiser. They were aware of many prior incidents of violent crime, including firearms offenses, reported in and around the Taylor housing project. Approximately nine to ten minutes after the initial call, the officers turned onto Ruggles Street, where they saw the defendant emerge from a path leaving the Taylor housing project. At that time, the defendant was approximately one-eighth of a mile from the apartment, and was the first person the officers had seen since departing the crime scene in their cruiser.
The defendant caught the officers' attention because he was walking quickly and generally fit the witness's description of the shooter. They noted that he was a black man, wearing a dark jacket or sweatshirt, with a height and build in the correct range.[4] The defendant crossed the street, and began walking toward them on the sidewalk. Without activating the lights or siren, Officer Dodd pulled the cruiser to the left side of the street, facing the wrong way, and stopped a short distance in front of the defendant. As he did so, the defendant slowed and placed his hands in his jacket pockets. The officers exited the cruiser. Officer Dodd stood on the sidewalk about twenty feet from the defendant, and Officer Hunter walked toward him on the street. They identified themselves as police officers, and Officer Dodd directed the defendant to show his hands. When he did not immediately cooperate, Officer Hunter repeated the instruction, saying something like, "Let me see your hands." Although the defendant seemed nervous and was breathing heavily, he complied. Officer Dodd then asked whether he had any weapons, and he stated, "I might have something. But it's not mine. I found it in Mattapan."
At that point, Officer Hunter pat frisked the defendant and discovered a box of bullets. Upon learning that he had neither a license to carry nor a firearm identification card, the officers placed him under arrest. He was convicted of the above listed charges, and this appeal ensued.
Discussion. 1. Motion to suppress. In reviewing a judge's ruling on a motion to suppress, "we accept the judge's findings of fact and will not disturb them absent clear error." Commonwealth v. Watson, 455 Mass. 246, 250 (2009). However, we "conduct an independent review of the judge's ultimate findings and conclusions of law." Commonwealth v. Washington, 449 Mass. 476, 480 (2007). The defendant does not challenge the findings of fact, and we discern no error therein. Accepting those facts, we conclude that the motion was properly denied.
The motion was denied on the grounds that (1) the defendant was not constitutionally seized until the patfrisk; and (2) at that time, the officers had reasonable suspicion to conduct the search. The defendant argues that the judge erred on both fronts, and that the bullets should have been suppressed as the fruit of the officers' unlawful actions. Specifically, he urges that, under the totality of the circumstances, he was seized when the officers inquired whether he had any weapons; and that, at that moment, they lacked the reasonable suspicion necessary to conduct a lawful Terry stop. See Terry v. Ohio, 392 U.S. 1, 20 (1968). We disagree. Even assuming that the defendant was seized at the moment he suggests, the facts then known to the officers, taken together, justified the stop. See Commonwealth v. McKoy, 83 Mass. App. Ct. 309, 313 (2013).
"[A]n investigatory stop is constitutionally justified if it is conducted on reasonable suspicion that the person seized has committed, is committing, or is about to commit a crime.... That suspicion must be grounded in specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a hunch." Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007) (quotation omitted). Under this "objective standard," we bear in mind that "a combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief." Commonwealth v. Meneus, 476 Mass. 231, 235-236 (2017) (quotation omitted).
Here, a host of factors established a reasonable belief that the defendant had been involved in the shooting even before Officer Dodd's weapons inquiry. First, the defendant was spotted in close "geographical and temporal proximity" to the crime, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 240, having encountered the officers about ten minutes after the shooting, only one-eighth of a mile from the apartment. See Commonwealth v. Barros, 425 Mass. 572, 584 (1997) ; Commonwealth v. Depina, 456 Mass. 238, 246 (2010). Second, he generally fit the witness's detailed description of the suspect both in terms of his physical attributes and his clothing.[5] Contrast Commonwealth v. Cheek, 413 Mass. 492, 496 (1992) (no reasonable suspicion where officers knew suspect's race but lacked other distinguishing characteristics such as height and weight). Third, his behavior was suspicious in that he appeared nervous, was breathing heavily, and initially refused to remove his hands from his pockets. See DePeiza, 449 Mass. at 371-372 ; Commonwealth v. Mathis, 76 Mass. App. Ct. 366, 373-374 (2010). Lastly, the interaction occurred in a high crime area, see DePeiza, supra at 372-373, in the immediate aftermath of a shooting. See Depina, supra at 247 ("The gravity of the crime and the present danger of the circumstances may be considered in the reasonable suspicion calculus"). These facts were sufficient to create an "individualized suspicion," Commonwealth v. Warren, 475 Mass. 530, 534 (2016), that the defendant was the perpetrator of the shooting, and justified the officers' investigatory stop.
2. Right to a fair trial. Prior to trial, the Commonwealth notified the defendant that it intended to elicit an opinion from its ballistics expert, Detective Camper, about whether the bullets found on the defendant's person constituted ammunition within the meaning of G. L. c. 269, § 10(h ). At trial, Detective Camper and Deputy Superintendent John Brown, both of the Boston police department, testified to the composition of ammunition generally, and Detective Camper described the ammunition recovered from the defendant in the present case. Detective Camper did not, however, offer an explicit opinion on direct examination that the cartridges recovered from the defendant qualified as ammunition. Following cross-examination, the judge mentioned this oversight to the parties at sidebar. The next morning, the Commonwealth was permitted to elicit Detective Camper's opinion on redirect examination over the defendant's objection.[6] The defendant now argues, relying primarily on Commonwealth v. Sneed, 376 Mass. 867 (1978), that the judge's actions amounted to improper advocacy in favor of the prosecution, and deprived him of his due process right to a fair trial. We disagree.
In Sneed, the Supreme Judicial Court granted a new trial where the judge exhibited clear partiality in favor of the prosecution, both in his comments made in front of the jury, as well as in his instructions to them. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 869-872. There, "the words of the judge, in total, could hardly have had anything other than a prejudicial effect on the jury." Id. at 872. There is no such judicial misconduct in this case. Here, the judge's only challenged comments were uttered outside the presence of the jury, where his imprimatur could not have had any prejudicial effect on their deliberations. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 870 (noting that "any judicial comment is likely to be accorded substantial weight by the jury"). Moreover, we detect no abuse of discretion.[7] See Commonwealth v. Hoffer, 375 Mass. 369, 375 (1978) (trial judge has discretion to allow or limit questioning on redirect examination).
In addition, the defendant's argument ignores other evidence introduced at trial, which is not challenged on appeal, demonstrating that the bullets constituted ammunition within the meaning of the statute.[8] See Commonwealth v. Mendes, 44 Mass. App. Ct. 903, 904 (1997). We are confident that the quality and quantity of that evidence negated any risk that the judge's ruling somehow impacted the outcome of this case.
3. Armed career criminal conviction. At the defendant's jury-waived trial on the armed career criminal portion of the indictment, the Commonwealth produced evidence of three prior convictions.[9] The defendant moved for a required finding of not guilty arguing, in part, that the Commonwealth failed to establish that the aggravated assault and battery (AA & B) conviction qualified as a "violent crime" within the meaning of the ACCA.[10] The judge denied the motion, and found that the defendant was an armed career criminal based on all three predicate offenses. In so finding, he held that the AA & B conviction qualified as a violent crime under both the residual and force clauses of the ACCA.[11] On appeal, given that the residual clause was recently declared void for vagueness,[12] see Commonwealth v. Beal, 474 Mass. 341, 351 (2016), the defendant primarily argues that there was insufficient evidence to support the force clause finding.[13] We disagree.
In reviewing a claim of insufficient evidence, we determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted). Commonwealth v. St. Hilaire, 470 Mass. 338, 343 (2015), quoting from Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). At a trial for sentence enhancement, "the Commonwealth need not retry the prior conviction"; rather, the "evidence must suffice to prove ... that the crime for which [the defendant] was convicted was a violent crime." Commonwealth v. Eberhart, 461 Mass. 809, 816 (2012). Where the defendant was convicted under a "broad statute that encompasses multiple crimes, not all of which are categorically violent," a certified copy of the conviction will not suffice. Beal, supra (quotation omitted). In such cases, Massachusetts courts use the modified categorical approach, examining extrinsic evidence,[14] to determine the particular theory underlying the conviction. See Eberhart, supra at 816.
Aggravated assault and battery, G. L. c. 265, § 13A(b ), is not categorically a violent crime and, therefore, necessitates this modified categorical approach. As explained in Eberhart, "The statutory crime of assault and battery, G. L. c. 265, § 13A, encompasses three common-law crimes: harmful battery, reckless battery, and offensive battery." 461 Mass. at 818. This is also true of AA & B.[15] However, only two of those three variations-harmful and reckless battery-qualify as "violent crimes" under the force clause. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 818-819. Thus, a conviction of AA & B can qualify as a violent crime only if there is "some additional evidence" that it was for a harmful or reckless battery. See Commonwealth v. Colon, 81 Mass. App. Ct. 8, 16-17 (2011). Viewing the evidence in the light most favorable to the prosecution, see St. Hilaire, 470 Mass. at 343, a rational fact finder could have found that the defendant's AA & B conviction was for a harmful battery.[16]
At the jury-waived trial, the Commonwealth introduced information about the factual basis for the AA & B conviction. First, it introduced the docket sheet, criminal complaint, and tender of plea sheet, which, together, indicated that the defendant pleaded guilty to a May 8, 2007, aggravated assault and battery on a victim who was then three months pregnant. Next, the Commonwealth elicited testimony from an MBTA police officer, Vincent Moy, regarding the circumstances surrounding the defendant's arrest. Per Officer Moy's testimony, on the night of May 8, 2007, he was dispatched to the Ruggles MBTA station where a suspect had been detained. Upon arriving, he observed the victim, who was scared, crying, and had a swollen face, and spoke with her about the assault. Shortly thereafter, the defendant was arrested and booked. This factual background, including the evidence of the victim's swollen face, was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the theory underlying the defendant's conviction was harmful battery. Contrast Eberhart, 461 Mass. at 813, 820 (Commonwealth failed to prove that a simple assault and battery constituted a violent crime where the only evidence was a certified copy of the conviction and testimony from the arresting officer that "provided no substantive information about the crime").
Judgment affirmed.

The defendant was acquitted on charges of murder in the first degree, armed assault with intent to murder, assault and battery by means of a dangerous weapon, and unlawfully carrying a firearm without a license.

The motion judge did not preside at the trial.

The defendant's appearance generally conformed to the witness's description, as he weighs about 180 pounds, is approximately five feet, eight inches tall, and was wearing a dark top. Per the motion judge's findings, however, the defendant was wearing a jacket with no hood, and a "mottled pattern of mostly dark blue with some black or deep navy blue, some brighter blue, and some white parts."

The defendant's race and weight matched the description, and his height and jacket were similar to those described by the witness. See Commonwealth v. Ancrum, 65 Mass. App. Ct. 647, 653 (2006) ("[A] full match up of all parts of the description" is not necessary to establish reasonable suspicion [quotation omitted] ).

The defendant objected primarily on the ground that the expert's opinion was outside the scope of cross-examination. However, in the body of the written objection subsequently submitted to the judge, the defendant raised the claim that the introduction of Detective Camper's opinion evidence on redirect examination would cause the court to abandon its proper judicial role, and constitute advocacy for the Commonwealth.

In order to prove a trial judge's abuse of discretion, the defendant must show prejudice. Commonwealth v. Rodriguez, 75 Mass. App. Ct. 235, 246 (2009). The defendant has not done so here because (1) the Commonwealth had already presented substantial evidence to prove that the bullets constituted ammunition prior to Detective Camper's testimony on redirect examination; and (2) the defendant had an opportunity to recross-examine the witness as to the additional testimony, but chose not to do so.

Detective Camper used one of the cartridges recovered from the defendant to point out the components of ammunition to the jury. He also described the ammunition recovered from the defendant, in part, as "jacketed soft point .357 caliber cartridges," and further detailed his observations on cross-examination.

The Commonwealth introduced records of two prior convictions of possession with intent to distribute a class B controlled substance, and one conviction of aggravated assault and battery.

The ACCA imposes enhanced sentences on defendants who have previously been convicted of a "violent crime" or "serious drug offense." See G. L. c. 269, § 10G.

As pertinent here, the force clause defines a "violent crime" as one that "has as an element the use, attempted use or threatened use of physical force." The residual clause (no longer in effect) included crimes that "otherwise involve[ ] conduct that presents a serious risk of physical injury to another." G. L. c. 140, § 121, as appearing in St. 1998, c. 108, § 8.

In Commonwealth v. Beal, 474 Mass. 341, 351 (2016), which was decided during the pendency of this appeal, the Supreme Judicial Court concluded that "the residual clause of the Massachusetts ACCA is unconstitutionally vague." As a result, we agree with the defendant that the AA & B conviction cannot qualify as a predicate offense under the residual clause.

The defendant does not contend that the other two convictions constituted invalid predicate offenses. To the contrary, his requested relief, as to this claim, is to be resentenced as a level two armed career criminal.

Unlike in Federal court, the inquiry made by sentencing judges in Massachusetts State courts is not limited to the trial record of the predicate crimes. See Commonwealth v. Eberhart, 461 Mass. at 816. Instead, "the trial judge may admit any evidence that would have been admissible at the original trial." Ibid. (quotation omitted).

AA & B differs from simple assault and battery in that it carries a steeper penalty, and requires additional proof that the assault at issue: (i) caused serious bodily injury; (ii) was carried out upon a pregnant victim, where the defendant knew or had reason to know of the pregnancy; or (iii) was carried out on a victim who had a restraining order against the defendant, where the defendant knew of the order. G. L. c. 265, § 13A(b ), as appearing in St. 2002, c. 35, § 1. However, "[t]hese differences do not change the underlying acts that constitute an assault and battery." Beal, 474 Mass. at 352.

A harmful battery is defined as "[a]ny touching with such violence that bodily harm is likely to result." Eberhart, 461 Mass. at 818 (quotation omitted).